Cecil E. McCLELLAND,
Plaintiff-Appellant,

v.

Jonathan B. FACTEAU, Individually, and in his official capacity as a police officer of the New Mexico State Police; Conn Brown, Individually, and in his official capacity as a police lieutenant of the New Mexico State Police; Jimmie R. Brown, Individually, and in his official capacity as an employee of the Farmington City Police Department, Defendants,

Martin E. Vigil, Individually, and in his official capacity as Chief of Police of the New Mexico State Police Department; and Robert L. Schmerheim, Individually, and in his official capacity as Chief of Police of the Farmington City Police Department, Defendants-Appellees.

No. 77–1709.

United States Court of Appeals,
Tenth Circuit.

Argued March 12, 1979.

Decided Nov. 19, 1979.

Rehearing Denied Jan. 22, 1980.

Andrew M. Ives, Jr. of Gerber & Ives, Santa Fe, N. M., for plaintiff-appellant.

Joe L. McClaugherty of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for defendants-appellees.

Before SETH, Chief Judge, and BREIT-ENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Cecil E. McClelland filed suit under 42 U.S.C. § 1983 against five defendants who allegedly deprived him of his constitutional

rights during arrest and custody. Three defendants, Conn Brown, a lieutenant in the New Mexico State Police, Jonathan B. Facteau, the state patrolman who arrested plaintiff, and Jimmie R. Brown, the jailer on duty at the Farmington City Jail, settled with McClelland and appropriate judgment was entered. Summary judgment was granted in favor of defendants Martin E. Vigil, Chief of the New Mexico State Police Department, and Robert L. Schmerheim, Chief of the Farmington City Police Department. These police chiefs did not personally participate in the alleged misconduct, but were charged with inadequate supervision and training of the other defendants and with failure to act in the face of knowledge of prior misconduct by those defendants. The appeal involves only the claims against Vigil and Schmerheim.

■ On appeal McClelland contends summary judgment should not have been granted, because there remained material issues of fact. The police chiefs argue they cannot be liable under section 1983 on the basis of their duty to train and supervise or without proof of their individual participation in the acts constituting the basis of the suit.[1]

McClelland's version of the basic facts is not controverted in the record, and in view of the settlement and the procedural posture of the case we take them as true. It appears that McClelland was stopped by Officer Facteau for speeding, and after refusing to sign the traffic citation he was taken to Farmington City Jail. McClelland was not permitted to use the mobile telephone in his truck to call his attorney, nor to call for his employee to pick up the vehicle. Instead, he was locked in the patrolman's car to await the arrival of a tow truck called by Officer Facteau. He was booked at the jail by Jimmie Brown, who eventually set bond at $50. McClelland was released after he paid this amount. Apparently during custody McClelland was questioned by Conn Brown, but not informed of

his constitutional rights, was denied any phone calls, and was not brought before a magistrate. Prior to his release he was made to lean against a wall where he was beaten and injured by Officer Facteau in the presence of the Browns. McClelland alleged a number of specific deprivations under the Fourth, Fifth, Sixth, and Fourteenth Amendments.

I

■ McClelland does not claim the police chiefs are liable under the doctrine of *respondeat superior.* This Court has held that doctrine cannot be used to hold liable under section 1983 superior officers who have no affirmative link with the misconduct. *Kite v. Kelley,* 546 F.2d 334 (10th Cir. 1976). Rather, McClelland asserts the police chiefs were directly liable through breach of their duty to properly train and supervise the subordinate officers.

Defendants argue that because the police chiefs had no personal knowledge of or did not participate or acquiesce in any of the alleged constitutional deprivations, they cannot be sued under section 1983; McClelland's attempt to hold them liable is a disguised *respondeat superior* claim. We do not agree. A crucial difference exists between liability as master (*respondeat superior*) and direct liability. *Respondeat superior* is a doctrine of vicarious liability based upon public policy—the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way. *See* Holmes, *The History of Agency,* 4 *Harv.L.Rev.* 345 (1882). Under direct liability, plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.

---

1. Defendants also contend the judgment entered against the other three defendants is *res judicata* in the ongoing action against themselves. We consider this argument frivolous; plaintiff has a separate cause of action against each defendant and is not precluded from acting against one by judgment against another.

The Supreme Court noted the causation requirement in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), when it found the Mayor, the Police Commissioner, and other high officials of Philadelphia not liable under section 1983 because there was no "affirmative link" between the misconduct complained of and any action by the officials. This Court applied the *Rizzo* decision in *Kite v. Kelley,* 546 F.2d 334 (10th Cir. 1976), in which an attempt was made to recover from the Attorney General of the United States and the Director of the Federal Bureau of Investigation for an agent's isolated acts done in violation of regulations. We held defendants could not be liable because the affirmative link requirement of *Rizzo* was not present.

The "affirmative link" requirement of *Rizzo* means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made.

. . . . .

Nothing in the record shows that any defendant instigated the investigation of plaintiff, directed its course, participated or acquiesced therein. *There is no proof of lack of training or of declaration of wrongful ·policy.* Indeed the disclosure by Adsit was contrary to FBI policy. In sum, plaintiff failed to establish the "affirmative link" which *Rizzo* requires.

*Id.* at 337, 338 (emphasis added). Other post-*Rizzo* cases have recognized that the section 1983 language "subjects, or causes to be subjected" is broader than direct personal involvement; it includes failure to perform a duty if that failure causes deprivation of protected rights. *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978); *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir. 1976).

This Court has held a cause of action under § 1983 was stated in a complaint that alleged a chief of police was liable because his failure to establish proper procedures or

adequately train or supervise personnel led to the deprivation of a prisoner's constitutional rights. *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974). Other circuits have also recognized a cause of action for a superior officer's negligence in training or supervising. *E. g., Burton v. Waller,* 502 F.2d 1261, 1285 (5th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *Beverly v. Morris,* 470 F.2d 1356 (5th Cir. 1972); *Carter v. Carlson,* 447 F.2d 358, 365 (D.C.Cir.1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

Whether "mere" negligence or some higher standard of malfeasance is necessary for a finding of liability is less clear. The Supreme Court in *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961),[2] held that section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Some cases appear to apply a gross negligence standard. *See Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979); *Bonner v. Coughlin,* 545 F.2d 565 (7th Cir. 1976). Arguably the good faith immunity approved in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), is recognition that something more than ordinary negligence is required of supervisory personnel.

The trial court here granted summary judgment in favor of the police officials, which is appropriate only if there exists no genuine issue as to any material fact. Fed. R.Civ.P. 56(c). The movant has the burden of proving there is no genuine issue of any material fact, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and must show entitlement to summary judgment beyond a doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir. 1978). The opposing party must come forward to show the existence of a fact issue, unless the depositions and affidavits of the movant, standing alone, would

---

2. *Monell v. Department of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled *Monroe v. Pape* insofar as it held local governments were immune from suit under § 1983.

not be enough for a directed verdict. *Stevens v. Barnard,* 512 F.2d 876, 878 (10th Cir. 1975).

In considering a motion for summary judgment, the materials presented by the parties must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). We therefore assume that McClelland was in some way deprived of his constitutional rights by the three subordinate officers. Both what occurred and whether he was deprived of constitutional rights would have to be proved by McClelland at trial, of course.

McClelland sets out basically two duties we will consider separately. First, he alleges negligence in the police chiefs' duty to train subordinates and to establish department procedures that will provide protection for people's constitutional rights. Regardless of the standard of care, we hold there is no genuine issue of fact on the question whether this duty was breached.

Both Schmerheim and Vigil brought forward affidavits and documents showing adequate training was given to the three subordinates and that departmental procedures then in effect would have secured McClelland's rights if they were followed. Thus, Schmerheim and Vigil met their initial burden. McClelland countered with no evidence to the contrary, except for alleging the subordinates violated his rights. Showing that individual officers violated a person's constitutional rights on an isolated occasion is not sufficient to raise an issue of fact whether adequate training and procedures were provided. *Cf. Bruce v. Martin-Marietta Corp.,* 544 F.2d 442, 448 (10th Cir. 1976) (proof of airplane crash does not give rise to presumption design was defective; summary judgment appropriate when state of art design shown by defendant.) Supervisors cannot automatically be held liable for a subordinate straying from the established path. "[T]o extend the general duty of these appellees to prudently select, educate and supervise police department employees to an isolated, spontaneous incident . . . would be beyond reason." *Jen-nings v. Davis,* 476 F.2d 1271, 1275 (8th Cir. 1973). Only by countering with evidence that the training or procedures were defective could McClelland have raised an issue of fact whether this duty was breached.

Next we consider the police chiefs' duty of supervision to correct misconduct of which they have notice. We agree with those courts that have found a cause of action under section 1983 when the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm. *E. g., Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976); *Wright v. McMann,* 460 F.2d 126 (2d Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). The standard to be applied is the conduct of a reasonable person, under the circumstances, in the context of the authority of each police chief and what he knew or should have known. We find there is a genuine issue of fact whether defendants breached this duty.

The rules and regulations cited of both police hierarchies indicate that the immediate and direct duty to supervise has been delegated, but the police chiefs have retained the ultimate responsibility for what goes on in the departments. The perimeters of their duty are uncertain and must be determined at trial.

In order to establish a breach here, plaintiff must show that the defendant was adequately put on notice of prior misbehavior. Although both Schmerheim and Vigil denied any knowledge of wrongdoing by the three subordinates, McClelland countered by tendering newspaper articles and affidavits indicating it was well known that rights were being violated in the Farmington jail and by state police officer Facteau, and showing Schmerheim was a party in two law suits involving the deaths of prisoners incarcerated in Farmington jail. Distant rumors that are too vague to prompt action by reasonable persons, or information that is reasonably believed to lack credibility do not provide sufficient notice. *Russ v. Ratliff,* 538 F.2d 799 (8th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Chestnut v. City of*

*Quincy,* 513 F.2d 91 (5th Cir. 1975). We hold, however, that McClelland's showing was adequate to raise an issue of fact on the sufficiency of notice because the accusations contained in the material were recent and serious. *Cf. Kellerman v. Askew,* 541 F.2d 1089 (5th Cir. 1976) (summary judgment in a 1983 action not appropriate when plaintiff's allegations show actual notice or that defendant should be charged with notice).

If any inferences can be drawn from the facts that might allow recovery from defendants, then summary judgment is not appropriate. *See Exnicious v. United States,* 563 F.2d 418, 423–24 (10th Cir. 1977). If publicity of police misconduct was widespread and credible it may be inferred police chiefs who admitted reading the daily newspapers knew of it. They had ultimate responsibility for what went on in the departments, and it might be found they should and could have taken steps that would have prevented the deprivation of McClelland's rights. Defendants can, of course, refute these inferences at trial, but we cannot hold that they are entitled to judgment now as a matter of law.

The case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.